| | | |
|---|---|---|
| MATTHEW PAUL QUALLS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:24-cv-00207 |
| | ) | |
| HAWKINS COUNTY, Tennessee, | ) | Jury of Twelve Demanded |
| a governmental entity, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S MOTION TO COMPLETE DISCOVERY; OR
ALTERNATIVELY, PLAINTIFF'S FED. R. CIV. P. 56(d) MOTION FOR
DEFERRAL OF DEFENDANTS' SIX MOTIONS FOR SUMMARY JUDGMENT
[Docs. 39, 43, 46, 47, 50, 54] PENDING LIMITED DISCOVERY;
OR ALTERNATIVELY, TO EXTEND PLAINTIFF'S TIME TO RESPOND**

**NOW** comes the Plaintiff, Matthew Paul Qualls, by and through his attorney, pursuant to

Fed. R. Civ. P. 56(d) and E.D. Tenn. L.R. 7.1(a), and moves the Court to permit him to complete

discovery in this case; or, alternatively, for an Order deferring a ruling on the Motions for Summary

Judgment filed by the Defendants [Docs. 39, 43, 46, 47, 50, 54], pending limited discovery; or

alternatively, to at least allow Plaintiff a thirty (30)-day extension of time to respond to the six

motions.[1] For grounds, Plaintiff would show:

1.      The parties advised the Court of the unwieldy discovery logistics, status of discovery,

and unsuccessful mediation efforts in a Joint Motion to Revise Scheduling Order in January 2026.

---

[1]Plaintiff has filed this Motion as an Expedited Motion because of the urgency of the
upcoming pretrial deadlines and July 2026 trial date. The parties have jointly moved the Court to
continue the trial and reset deadlines. Discovery is incomplete. The Court entered an order
resetting deadlines to allow more time, but did so in relation to a January motion [Doc. 35] that
had already been superseded by a Joint Motion on March 26 [Doc. 36]. The March motion
remains pending. The instant motion explains the dilemma in detail.

[Doc. 35]. By March 26, 2026, various obstacles and scheduling conflicts among Plaintiff's and Defendant's counsel – including the birth of the undersigned's twins and related medical issues, the unavailability of defense counsel for the month of January 2026, the unavailability of SHP's corporate representative for February 2026 – had further delayed the completion of discovery. On March 26, 2026, the parties jointly moved the Court to continue the July 2026 trial and reset deadlines. [Doc. 36]. This Joint Motion superseded the January 2026 Joint Motion, as the discovery deadline had already expired and other pre-trial dates were fast-approaching.

2.      On April 3, 2026, the Court granted the January 2026 Joint Motion, which, again, had been superseded, and the Court has not yet ruled on the parties' Joint Motion for a continuance and to reset deadlines. As a result, because the discovery deadline expired before the April 3, 2026 Order, Defendants signified their refusal to complete even discovery that had theretofore been agreed upon, and, although the parties had engaged in informal settlement discussions as late as April, those efforts also collapsed in view of fast-approaching dispositive motion and other pretrial deadlines.

3.      Plaintiff attempted to seek clarification of the Court's April 3 order via motion on April 29, 2026 [Doc. 38], but that motion has also not been ruled on at this time. Plaintiff's counsel attempted to contact the Court's chambers for clarification, but did not receive a return call. He then contacted the Magistrate Judge's chambers and, while his concerns were validated by a clerk, who reviewed the docket and quickly noticed the issues, all she could do was promise to pass those concerns on to others.

4.      Pressed to file their dispositive motions by a May 4, 2026 deadline, Defendants filed six separate motions for summary judgments, undisputed fact statements, briefs, and multiple

-2-

declarations. [Docs. 39-56]. Currently, Plaintiff finds himself unable to sufficiently respond to those motions, lacking discovery necessary for his counsel to prepare adequate responses. The trial date remains set for July, notwithstanding the parties' joint assessment in March that the case could not be readied for trial by that date. Meanwhile, Plaintiff is confronted by response-deadlines and multiple other pretrial deadlines.

5.      There are eleven (11) Defendants – including Hawkins County, the Sheriff, and four corrections officers ("the Hawkins County Defendants"); and Southern Health Partners LLC ("SHP"), Dr. Kenneth Matthews ("Dr. Matthews"), and three SHP LPNs ("the SHP Defendants") – in this action alleging civil rights violations under 42 U.S.C. § 1983, the Fourteenth Amendment to the United States Constitution, and state claims of negligence. [Doc. 1, at ¶¶ 100-248].

6.      The Court entered an initial Scheduling Order in this case on January 17, 2025. [Doc. 21]. Because Plaintiff's counsel has filed no fewer than thirty-three (33) federal civil rights cases in this Court, he immediately noticed that the Scheduling Order reflected that the case was categorized as *pro se prisoner civil rights* litigation.[2] For that reason, the Scheduling Order did not contain certain standard and important deadlines, including, but not limited to, deadlines for disclosure of experts, deadlines for motions in limine, a deadline for submission of jury instructions, pretrial disclosures, and a date for a pretrial conference.

7.      Plaintiff's counsel contacted the Court Clerk's Office to advise the staff of what he believed may have been an administrative docketing error. By July 15, 2025, the pro se prisoner

_____

[2]Plaintiff's civil cover sheet designated the case under Code 440 as "other civil rights litigation," and indicated Plaintiff was not a pro se prisoner, but was, in fact, represented by counsel. Nevertheless, the case was mistakenly docketed as a "prisoner petition" under Code 550 [Doc. 1-1] and a scheduling order suitable for *pro se prisoner civil rights* litigation was entered.

civil rights litigation scheduling order remained the operative order. Accordingly, the parties – then in the midst of written discovery and depositions – jointly moved the Court to revise the order to reflect that the case is not, in fact, a *pro se prisoner case*, to specifically include the aforementioned and additional important deadlines, and also to eliminate several unnecessary deadlines geared for prisoner litigation, *i.e.*, pretrial narrative statements. [Doc. 27]. Given the scope of discovery, the number of parties involved, and other relevant considerations, the parties sought to extend to discovery deadline to November 24, 2025, and the dispositive motion deadline to February 23, 2026. [Doc. 27].

8.      On August 5, 2025, the Court entered an Amended Scheduling Order, adding the requested deadlines, including February 6, 2026 as the fact and expert discovery deadline,  March 23, 2026 as the dispositive motion deadline, set expert disclosure deadlines, and resetting the trial for July 21, 2026. [Doc. 31].

9.      The parties continued to conduct extensive written discovery (six sets of discovery targeting one or more parties) and take the first seven of more than a dozen planned depositions, the number of parties (12) and non-party witnesses (10) (including six experts, the Jail Administrator, surgeons who repaired Plaintiff's facial fractures, and an imprisoned inmate), made completion of discovery by February 6, 2026 an impossibility. Following two rounds of party-depositions, the parties' counsel scheduled a third round of depositions for December 18, 2025. Ultimately, the parties used that date to engage in mediation before Knoxville attorney Howard Vogel. The December 18, 2025 mediation was unsuccessful.

10.      On December 23, 2025, the parties' attorneys exchanged emails discussing depositions and the need to seek more time to complete discovery. Coordinating and scheduling the

-4-

remaining depositions during the holiday season, and in January-February 2026, had become increasingly impracticable, and ultimately, impossible. For instance, on January 5, 2026, Mr. Beasley, who represents the SHP Defendants, advised Plaintiff's counsel via email that he was unavailable for the rest of January 2026 for depositions. Two days later, Plaintiff's counsel reported that his schedule was booked for January as well. Plaintiff's counsel was advised by Mr. Beasley that no corporate representative for SHP could be available during February for a deposition.

11.     Conceding all this, on January 21, 2026, having paused discovery to mediate the case, the parties again jointly moved the Court to reset the discovery deadline to March 20, 2026, move the dispositive motion deadline to May 4, 2026, and move the non-dispositive motion deadline to June 12, 2026. [Doc. 35].

12.     The parties took a third round of party depositions on February 4, 2026, as they continued informal discussions about a potential resolution to the case. Two days later, the existing discovery deadline expired. [Doc. 31]. By then, the parties had taken seven party depositions, leaving five remaining party depositions, up to six expert depositions, two treating surgeon depositions, and an inmate deposition to be completed.

13.     By March 12, 2026, the Court had not yet ruled on the January 21, 2026 Joint Motion to extend the deadlines [Doc. 35], so the parties' attorneys discussed filing another Joint Motion, to request a new trial date, extended deadlines for discovery, and dispositive motions, among other deadlines. Mr. Beasley indicated that he had called and talked to a law clerk in the Court's chambers who anticipated an order in the coming days.

14.     The parties' attorneys recognized that more time was needed to complete fact and expert discovery and other pre-trial matters, and a new trial date was necessary. Accordingly, they

scheduled a call to discuss the filing of another Joint Motion, this time, to continue the trial and reset deadlines.[3]

15.     On March 17, 2026, Plaintiff's counsel sent another email to opposing counsel asking to schedule the remaining discovery. By March 23, 2026, the existing dispositive motion deadline had expired. [Doc. 31]. On March 24, 2026, Plaintiff's counsel emailed opposing counsel, raised concerns about the discovery deadline, and asked to set up a call to discuss scheduling. After discussing further scheduling, on March 26, 2026, a Joint Motion to Continue Trial and Reset Deadlines was filed by Mr. Ward. Significantly, the relief sought in that motion completely superseded the relief sought in January, mooting the deadlines that motion had proposed. [Doc. 36].

16.     On March 27, 2026, Mr. Beasley informed Plaintiff's counsel that Dr. Matthews was available for a deposition on May 21, 2026 or May 28, 2026. Plaintiff's counsel announced his availability for May 21, 2026.

17.     However, these and other discovery plans were completely upset on April 3, 2026, when the Court granted the now-superseded January Joint Motion. [Doc. 37]. The Order adopted deadlines the parties had requested months earlier, but which had either expired by then or become unworkable. [Doc. 37]. The most time sensitive deadlines requested in January – the discovery deadline of March 20 and dispositive motion deadline of May 4, 2026 – had been mooted by the

---

[3]On March 13, 2026, Plaintiff's counsel's wife gave birth to twin boys, who were immediately admitted to the Neonatal Intensive Care Unit at Children's Hospital. Plaintiff's counsel notified opposing counsel, suggesting a motion for new deadlines and a new trial date.

-6-

March 26, 2026 Joint Motion to Continue Trial and Reset Deadlines. In that motion, the parties had agreed to extend the fact and expert discovery deadline to September 11, 2026, and to extend the dispositive motion deadline to October 16, 2026. [Doc. 36].

18.     The effect of the April 3, 2026 Order was that Defendants' now-expired dispositive motion deadline was extended to May 4, 2026, while the discovery deadline of February 6, 2026, was "extended" to March 20, 2026. [Doc. 36]. This gave Defendants time to file their late dispositive motions, but did not even give Plaintiff additional time to complete the discovery.

19.     Plaintiff's counsel immediately contacted Mr. Beasley on April 3 to confirm that the previously set deposition of Dr. Matthews would go forward. Plaintiff's counsel suggested a conference call to discuss advising the Court of the status of discovery.

20.     On April 5, 2026, Mr. Ward, representing the County Defendants, suggested the parties "wait" for the Court to rule on the March 26, 2026 Joint Motion [Doc. 36]. Only if the Court denies the March 26, 2026 Joint Motion, Mr. Ward stated, would the parties "need a motion for a status conference," but he was "not inclined to file another motion right now."

21.     On April 9, 2026, Mr. Beasley informed Plaintiff's counsel that "I won't put Dr. Mathews (sic) up in violation of the current court-ordered deadlines. I am holding the date in his schedule and mine in case things change." In other words, Mr. Beasley was not going to offer up Dr. Matthews as scheduled, because the Court's April 3, 2026 Order reflected discovery was closed.

-7-

22. Things did not change. In view of the April 3 Order, Mr. Ward further stated that he believed future settlement talks were a waste of time and that he was going to proceed with motions for summary judgment and seek "recovery of their attorney's fees."[4]

23. Under the circumstances, Plaintiff's counsel did not believe it appropriate to "await" any ruling by the Court on the Joint Motion to Continue Trial and Reset Deadlines. [Doc. 36]. Plaintiff's counsel, having previously agreed in good faith with opposing counsel on the proposals jointly submitted to the Court to extend the discovery and dispositive motion deadlines, found himself cornered, facing upcoming fact-based motions for summary judgment, without having deposed Dr. Matthews, without having deposed Defendants' experts, without having deposed CO Wolfe, without having deposed SHP's corporate representative(s), and without having deposed the inmate who had beaten his client.[5]

24. Under the circumstances, on April 29, 2026, Plaintiff sought immediate clarification of the pretrial schedule. [Doc. 38].[6] The Court has not ruled on the March 26, 2026 Joint Motion to Continue Trial and Reset Deadlines. [Doc. 36]. Nor has the Court ruled on the April 29, 2026 Motion to Clarify [Doc. 38], to which none of the Defendants offered a response or opposition.

25. Plaintiff is confronted by six motions for summary judgment, statements of undisputed material facts, briefs, and evidence [Docs. 39-56], representing every Defendant:

---

[4]The parties informally continued their efforts to resolve the case, discussing settlement as recently as April 24, 2026.

[5]The inmate is currently housed at South Central Correctional Facility in Clifton, Tennessee. Taking the inmate's deposition would require an order from the Court and logistical coordination with the correctional facility.

[6]Plaintiff adopts and incorporates by reference the contents of the Motion to Clarify, as if set forth herein verbatim. [Doc. 38].

-8-

■ Sheriff Lawson argues that he is entitled to qualified immunity; that he had no involvement in the Plaintiff's incarceration; that correctional officers had all the training required by Tennessee law; that there is no evidence that an alleged failure to train or supervise the correctional officers on duty caused the assault on Qualls; and there is no evidence that he was negligent. [Doc. 39]. Lawson's motion is supported by his 18-paragraph declaration, claiming lack of culpability, citing Tennessee Corrections Institute reports, and discussing and attaching the jail's inmate classification policy [39-1]. Lawson's motion is also supported by the 32-paragraph declaration of Butch Gallion that discusses, among other things, videos of the Jail, Plaintiff's booking and classification, officer-training, officer actions, Jail conditions, cell checks, and SHP's medical contract. [Doc. 39-2].

■ Hawkins County argues that its officers committed no constitutional violations, that it has no policy or practice of deliberate indifference to the safety of pretrial detainees, that it has no policy or practice of deliberate indifference as to training or supervision of its correctional officers; and that there is no evidence that a "deputy" engaged in conduct exceeding negligence. Hawkins County also supports its motion by Lawson and Gallion's declarations. [Doc. 43].

■ Defendants Harvey and Wolfe argue that they have qualified immunity, insisting that they primarily monitored B pod, that there is no evidence that either was deliberately indifferent to Plaintiff's safety, and that there is no evidence that they were negligent or grossly negligent. [Doc. 47].

■ Defendant Hailley Burton argues that she was not involved in the Plaintiff's booking process or his assignment to B pod; nor was she directly involved in monitoring B pod. Rather, she insists that she was only involved in monitoring the entire jail through Central Control. She claims there is no evidence that she was deliberately indifferent to any risk of violence to Plaintiff by other inmates; and argues that she is entitled to qualified immunity. Finally, Burton maintains there is no evidence that she was negligent or grossly negligent [Doc. 50].

■ Defendant Allen states that she was involved in the Plaintiff's booking process and his assignment to B pod, but argues there is no evidence that she was deliberately indifferent to any risk of violence to Plaintiff by other inmates. She maintains that she is entitled to qualified immunity and there is no evidence that she was negligent.

-9-

[Doc. 54]. Defendant Allen supports her motion with a 16-paragraph declaration, within which she states her reasoning for placing Plaintiff in the cell assigned, relates her conversations with Plaintiff and his assailant, and claims that Plaintiff was checked on regularly.

■ Defendants SHP, Dr. Matthews, and nurses Arnold, Gordon, and Kyle argue in their motion that Plaintiff failed to present the evidence needed to prove a deliberate indifference claim. SHP insists that it cannot be liable because the Plaintiff did not prove any basis for Monell liability. [Doc. 46].

26.     Yet, discovery is not complete. The depositions of Plaintiff, three Jail nurse Defendants (Destiny Arnold, Sarah Gordon, and Kayla Kyle), and three Corrections Officers (Hailey Burton, Brandon Harvey, and Jessica Allen) have been completed. However, Plaintiff has not yet taken depositions of four Defendants (SHP's corporate representative; Dr. Matthews, Sheriff Lawson, and Corrections Officer Wolfe); a state prisoner (Jordan Ferrell); up to six medical or jail experts, including Dr. Jack Goetcher (who performed maxillofacial surgery on Plaintiff to repair facial fractures); Dr. Webb (who initially performed maxillofacial surgery on Plaintiff to repair facial fractures); Bill Harmening (Plaintiff's jail expert); Dr. James Louthan (Plaintiff's medical expert); Brian D. Bivens (Hawkins County's Jail expert); Dr. Grady J. Bazzel (SHP medical expert); and Dr. Nathan Trentham (SHP medical expert); and Lt. Butch Gallion, former Jail Administrator for Hawkins County.

27.     The parties were diligent in their discovery efforts. They exchanged initial disclosures and amended initial disclosures; they exchanged extensive written discovery (Plaintiff served written Interrogatories and Requests for Production of Documents and Things on each of the eleven Defendants, and each responded; and Defendants served multiple sets of written discovery on Plaintiff, who also responded); and the parties have taken seven depositions. The parties postponed depositions in December 2025 in an effort to mediate the case. They were still attempting to settle

-10-

the case informally as late as April 2026, when the fast-approaching May 4 dispositive motion deadline collapsed those efforts.

28. Indeed, the parties had long cooperated and agreed on depositions throughout the litigation. They had even scheduled further depositions as well, including the deposition of Dr. Matthews. However, when the Court entered the Order on April 3, 2026 [Doc. 37], granting the January 21, 2026 Joint Motion [Doc. 35], but not considering the March 20, 2026 Joint Motion [Doc. 36], Dr. Matthews's counsel cancelled his Deposition.

29. Plaintiff should be granted an opportunity to complete discovery, as the parties had previously agreed, or to at least conduct limited discovery of the parties, witnesses, and experts necessary to allow his counsel to properly respond to the six pending dispositive motions.

30. Even under a rudimentary examination, Defendants' various versions of events differ substantially from the one detailed by Plaintiff in his Complaint. [Doc. 1, ¶¶ 43-248]. Unfortunately for Plaintiff, he cannot avail himself of self-serving declarations of Sheriff's employees, corrections officers, or nurses. Thus, he must rely upon the next best evidence available to him, *i.e.*, the testimony or evidence mined from discovery of the parties, witnesses, and experts.

31. The issue of qualified immunity, as the Court well knows, is fact-intensive. These and other defenses and fact-disputes necessitate the completion of discovery, or at least limited discovery. Plaintiff's counsel has identified topics or the general scope of discovery that appears necessary to enable Plaintiff to respond to the various arguments made by Defendants:

■ depositions of Defendant and Declarant Sheriff Lawson and Declarant Jail Administrator Gallion concerning any Hawkins County policy or practice of deliberate indifference to the safety of pretrial detainees, including unsafe jail conditions, inmate classification, and cell checks;

-11-

■ depositions of Lawson and Gallion as to Hawkins County policy or practice of deliberate indifference as to the training or supervision of corrections officers to protect inmates from assaults by other inmates;

■ depositions of Lawson and/or Gallion as to statements made in their declarations [Doc. 39-1 and 39-2], including statements about Lawson's culpability for Plaintiff's injuries and Tennessee Corrections Institute reports; relevant jail videos, monitoring of security cameras, Plaintiff's booking and classification, officer-training, officer actions alleged in the Complaint, and SHP's medical contract and the duties of SHP personnel; and as to all other issues raised by Hawkins County Defendants in their Motions for Summary Judgment and supporting documents;

■ deposition of Gallion as to whether Plaintiff was ever properly assessed and booked by booking officer (Defendant Allen); whether Defendant Burton was properly monitoring inmates in the Central Control room; and the nature and scope of her duties there;

■ deposition of Defendant Wolfe as to whether Wolfe or others made security checks on Plaintiff; his knowledge of any risks to Plaintiff, expressed by him or others; and his involvement in monitoring Plaintiff, finding Plaintiff after the assault, and interactions with Plaintiff before and after the assault; as to whether he discussed the assault with others; as to any statements, including written reports, given by him or others concerning the incident; as to all other issues raised by Wolfe or other Hawkins County Defendants in their Motions for Summary Judgment and supporting documents.;

■ deposition of Dr. Matthews, as to why Plaintiff was not transported to a hospital where his injuries could have been properly diagnosed and treated; as to the reasons for not transferring Plaintiff to a hospital; as to whether and/or when Dr. Matthews was made aware of Plaintiff's injuries, and by whom, and what actions Dr. Mathews took relative to Plaintiff's injuries; as to whether Dr. Matthews ever examined Plaintiff or ordered that he be examined by anyone; as to whether Dr. Matthews directed his medical staff at the Jail to contact EMS, a doctor, or take Plaintiff to an ER or hospital; as to whether he ordered a neurological or cognitive examination or evaluation of Plaintiff; as to whether the "treatment" Plaintiff received from SHP's personnel was tantamount to no "treatment" or medical care at all; as to why Dr. Matthews failed to approve certain medical notes by nurses until weeks later; whether the SHP Defendants denied or

-12-

failed to provide adequate medical care to Plaintiff; and as to all other issues raised by SHP Defendants in their Motion for Summary Judgment and supporting documents;

■ deposition of SHP's corporate representative, as to SHP's contract with Hawkins County, policies, procedures, customs, and practices of SHP; as to training, supervision and monitoring of Jail nurses and physicians; as to the employment histories of SHP personnel named Defendants in this action; as to other cases in which it has been alleged that SHP has denied or failed to provide adequate medical care at the Hawkins County Jail or at other Jails; as to all other issues raised by SHP Defendants in their Motion for Summary Judgment and supporting documents.

■ deposition of Jordan Ferrell, a state inmate, as to the details of the assault, interaction with officers, and interaction with the Plaintiff;

■ deposition of Dr. Jack Goetcher, who performed maxillofacial surgery on Plaintiff to repair facial fractures, as to nature, scope, obviousness and seriousness of injuries; and

■ Dr. Webb, who initially performed maxillofacial surgery on Plaintiff to repair facial fractures, as to nature, scope, obviousness and seriousness of injuries.

[Baker Decl., ¶ 21].

32. Defendants have also disclosed three experts, Brian D. Bivens (Hawkins County's Jail expert), Dr. Grady J. Bazzel (SHP's medical expert), and Dr. Nathan Trentham (SHP's medical expert). These witnesses do not necessarily need to be deposed for summary judgment purposes, as Defendants have not heretofore relied upon their reports or opinions to support their motions. However, to the extent Defendants do intend to rely upon their experts' opinions in their reply briefs to support summary judgment (or any related motion or proceeding), Plaintiff believes their deposition testimony is also required.

33. As described above, Plaintiff believes that by completing discovery – that is, by deposing the parties, experts, and witnesses the parties envisioned and planned to depose before the

-13-

discovery deadline expired, using all available records, reports, and other documents – he will obtain testimony to counter each Defendant's declarations and other evidence presented. Because there are disputes as to the underlying facts – which cannot be resolved but through the discovery process – additional discovery is not only permissible, it is also necessary.

34. Without these proposed depositions, the record is not sufficiently developed to evaluate the issues presented at this stage, as too many factual disputes exist.

35. Plaintiff''s counsel believes sixty (60) to ninety (90) days will be sufficient to complete the proposed depositions, most or all of which the parties had previously envisioned taking by agreement. [Baker Decl., ¶ 20].[7] Plaintiff requests thirty (30) additional days after the completion of such discovery to respond to the six motions for summary judgment.

36. Alternatively, if the Court is not inclined to allow limited discovery in this cause, Plaintiffs would respectfully request an additional period of time – at least thirty (30) days – to respond to the six separate Motions for Summary Judgment.

In support hereof, Plaintiff relies upon the Baker Declaration (Exhibit 1) and his separately filed Memorandum in Support, both incorporated herein by reference.

**WHEREFORE**, Plaintiff moves the Court to enter an order allowing him to complete discovery in this case; or alternatively, deferring a ruling on the Motions for Summary Judgment [Docs. 39-56], allowing his counsel an opportunity to conduct limited discovery, as proposed herein, and allowing Plaintiff an additional thirty (30) days from completion of discovery to respond to the

---

[7]Plaintiff understands that the trial is currently set for July 21, 2026, and the completion of discovery or even limited discovery would alter that date; but, as the parties jointly informed the Court in their motion on March 26, 2026 [Doc. 36], and as Plaintiff further detailed in his Motion to Clarify on April 29, 2026 [Doc. 38], and above, the case is simply not ready for trial.

-14-

motions for summary judgment; or alternatively, for at least a thirty (30)-day extension of time to

respond to those six separate Motions.

Respectfully submitted, this 26th day of May, 2026.

/s/ Lance K. Baker
Lance K. Baker
Tenn. Bar #: 032945
**THE BAKER LAW FIRM**
First Horizon Plaza
800 S. Gay Street, Suite 1950
Knoxville, TN 37929
Tel: (865) 200-4117
Email: lance@lbakerlawfirm.com

*Counsel for Plaintiff*

-15-

**CERTIFICATE OF SERVICE**

I do hereby certify that a copy of the foregoing was submitted electronically through the Court's Electronic Filing System ("ECF").  Notice of this filing will be sent by operation of the Court's ECF to all parties indicated on the electronic filing receipt.

This 26th day of May, 2026.

/s/ Lance K. Baker
Lance K. Baker

-16-